**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

REGINA SMITH; ESTATE OF MARC S.
SMITH, Regina Smith, Administrator and
Special Administrator,

    Plaintiffs - Appellants,

v.

CITY OF WELLSVILLE, KANSAS;
WILLIAM LYTLE, Mayor, in his
individual capacity; DARIEN KERR, in
his individual capacity; ROBERT WAYNE
WHALEN, SR., husband; JANICE EDNA
WHALEN, wife; DWANE M. DIGHANS,
husband; NELINA M. DIGHANS, wife;
SCOTT W. SPARKS, husband; PEGGY
A. SPARKS, wife,

    Defendants - Appellees.

No. 20-3240
(D.C. No. 2:19-CV-02431-JWB-KGG)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

The City of Wellsville Water System has been delivering water to the home of

Regina Smith and her now-deceased husband Marc[1] through a water meter attached

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] This suit was originally brought by both Smiths, but Marc Smith passed away
before the first amended complaint was filed.

to the Smiths' private water-service line. Three neighboring couples (the Neighbors) have tapped into that water line; but there is no formal agreement between the Smiths and the Neighbors concerning water bills or other associated costs, and disputes have arisen. When the Smiths sought a solution from the City, it did not respond to their satisfaction, so the Smiths filed this suit alleging violations of their federal constitutional rights (denial of equal protection, taking of property without compensation, and denial of substantive due process) by the City, Mayor William Lytle, and Darien Kerr, the certified operator of the Wellsville Water System (collectively, the City Defendants), as well as violations of the Smiths' rights under Kansas law by those three defendants and the Neighbors. The district court granted the City Defendants' motion to dismiss with prejudice the claims raised under the Constitution and dismissed without prejudice all the state-law claims. Mrs. Smith appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      BACKGROUND

Because we are reviewing the dismissal of a complaint for failure to state a claim, we accept as true the well-pleaded allegations of the operative complaint, which here is the first amended complaint (the Complaint). *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

Despite living outside the City, the Smiths have received water service from the City through a city water meter since 1999. Their private service line extends approximately 1,000 feet from the meter to the Smith property. The Neighbors have obtained water by tapping into the private line. The City Water Authority charged the

2

Smiths for the water usage registered by the city meter, and the Smiths relied on the Neighbors to read their own private meters to settle accounts, although there is no written agreement governing the line. When the Smiths decided in 2018 that they would like to sell their property, they were informed that this informal arrangement would reduce the value of their property.

The Smiths sought help from the City. They proposed creation of a board through which they and the Neighbors would share ownership of the line; the City Water Authority would transfer the ownership of the meter to the board, and the board would bear the burden of paying the water bills and the costs of maintenance or replacement of the line. The City declined to go along with the arrangement. At a City Council meeting the Mayor announced that "[t]he Smiths could not remove the . . . Neighbors from the water line, or cut off their water," and "[t]he City would sell the . . . Neighbors city meters at the City's cost so they could attach them to [the Smiths'] Water Line." Aplt. App., Vol. 1 at A.177. Also, a few months later a City building inspector demanded that the Smiths "give [the] Water Line to the City" so that the meters could be attached for the neighbors, and said that if they refused, "the City would take the line." Aplt. App., Vol. 1 at A.178.

The Smiths then filed suit. The Complaint asserts several civil-rights claims under 42 U.S.C. § 1983 against the City Defendants for violations of the Fourteenth Amendment of the United States Constitution: denial of equal protection, taking of property without compensation, and denial of substantive due process. The Complaint also alleges claims under Kansas law against all the defendants. The City

3

Defendants moved to dismiss all claims. The district court granted the motion, dismissing the constitutional claims with prejudice and dismissing the state-law claims against all defendants without prejudice because it declined to exercise supplemental jurisdiction over those claims, *see* 28 U.S.C § 1367(c)(3).

After her federal suit was dismissed, Mrs. Smith brought her Kansas state-law claims in Kansas state court. The City Defendants moved for judgment on the pleadings, asserting that under Kansas law her claims were precluded because of the dismissal of those claims by the federal court. The court granted the motion, and Mrs. Smith has appealed in state court.

## II.     DISCUSSION

 "We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim." *Sinclair*, 989 F.3d at 765. "A complaint must allege facts sufficient to state a plausible claim for relief on its face—that is, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). We first review the merits of the claims under § 1983 in the Complaint. We then address two procedural issues raised by Mrs. Smith.

### A.     The Constitutional Claims

We hold that the Complaint does not adequately allege any of the three asserted constitutional violations. We therefore need not decide whether Mayor Lytle or Mr. Kerr was entitled to qualified immunity on the ground that the relevant constitutional law was unsettled at the time they acted. *See Cummings v. Dean*, 913

F.3d 1227, 1239 (10th Cir. 2019) ("When a defendant raises the qualified-immunity defense, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (emphasis and internal quotation marks omitted)). Nor need we decide whether the City could escape liability because a constitutional violation was not caused by a City policy or practice (such as a failure to adequately train City personnel). *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019) (noting five potential sources for municipal policies or customs that can establish municipal liability). We discuss the three alleged violations separately.

### 1.     Equal-Protection Claim

The Complaint alleges a denial of equal protection of the law because the Smiths were not treated the same as other customers of the Wellsville Water System. It relies on the notion of a "class of one" equal-protection claim set forth by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Such a claim must satisfy two conditions: First, a plaintiff must establish that others who were "similarly situated in every material respect were treated differently." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal quotation marks omitted). Second, "[a] plaintiff must then show this difference in treatment was without rational basis[.]" *Id.*

The equal-protection claim in the Complaint fails at the first step of the analysis: It does not identify a single individual, much less a class of individuals, similarly situated to the Smiths in every material respect. It alleges that they were

5

treated differently from all other water customers because the City Water Authority has refused "to install an up-to-code water main that can serve [the Smiths'] property." Aplt. App., Vol. 1 at A.179.  But the Complaint does not allege that any other customer (1) lives outside the city limits of Wellsville, (2) has a private water line, and (3) has other persons tapping into that private line. In particular, as Mrs. Smith's opening brief in this court states: "[N]o other water customers have the arrangement Smith finds herself in where there are three other households tapped into Smith's private water line beyond her water meter without their own city meters." Aplt. Br. at 16. We do not think it irrelevant that to satisfy Mrs. Smith, the City would have to become involved in a dispute among property owners over matters occurring on private property about private property. The failure to allege that the City has acted differently in similar disputes defeats the equal-protection claim.

### 2.    Takings Claim

Mrs. Smith alleges that the actions of the City Defendants, especially the statements by the Mayor and the building inspector regarding the installation of water meters on the private line, constituted "a taking of [her] property without just compensation." Aplt. App., Vol. 1 at A.181. The Supreme Court has recognized two types of per se takings: (1) a permanent physical invasion of property by the government and (2) "regulations that completely deprive an owner of *all* economically beneficial use" of the property. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (internal quotation marks omitted). But Mrs. Smith disavows making any claim that there has been a physical taking of her property, nor

6

does she allege that the City has deprived her of all economically beneficial use of her property. Rather, she characterizes what occurred as a third type of taking, which is assessed under the standards set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). Such a regulatory taking may be found "based on a complex of factors, including (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *N. Mill St.*, 6 F.4th at 1224 (internal quotation marks omitted).[2]

The problem for Mrs. Smith is that her brief does not adequately argue the point. Despite citing to *Penn Central* and reciting the relevant factors, Mrs. Smith makes no attempt to apply them. Instead, she merely asserts that the statements by the Mayor were so restrictive "that she has effectively been deprived [of] the ability to use [the water line] as she deems fit." Aplt. Br. at 19. That assertion does not advance the analysis, as a multitude of government regulations restrict an owner's use of property without effecting a taking. We follow our customary practice of declining to review the claim on appeal rather than assuming for ourselves the burden of constructing a persuasive argument for a party. *See Perry v. Woodward*, 199 F.3d

---

[2] The Supreme Court recently held that the government appropriation of a right to exclude persons from one's property constitutes a per se physical taking. *See Cedar Point Nursery v. Hassid*, 141. S. Ct. 2063, 2072 (2021). But Mrs. Smith has advanced no such argument, even after the theory was suggested by the court during oral argument. (*Cedar Point* was handed down after briefing in this appeal was complete, but well before oral argument.) We therefore decline to pursue it.

1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

### 3.    Substantive-Due-Process Claim

Mrs. Smith alleges that the City's actions violated her right to substantive due process when it "confiscated" the private water line and granted the Neighbors the right to install water meters on it. Aplt. App., Vol. 1 at A.182. The discussion of the substantive-due-process claim in her appellate brief describes as follows the property interest she has been deprived of:

> Smith's interest in her personal property is not some abstract interest such as an interest in public employment under which claims under the Fourteenth Amendment Due Process Clause are generally asserted. Rather, Smith's interest in her water line is tangible and definite. Ownership in private property is so fundamental that the Fifth Amendment to the Constitution specifically recognizes that the government cannot take private property for public use without compensation.

Aplt. Br. at 21. Thus, the substance of this claim is identical to that of her takings claim; the deprivation on which Mrs. Smith bases her substantive-due-process claim is the same deprivation on which she bases her takings claim.

We therefore need not address the substantive-due-process claim. This court has recognized that the Supreme Court has rejected substantive-due-process challenges "where the allegedly illegal governmental action was clearly encompassed by some other, more specific, enumerated constitutional right." *Bateman v. City of W. Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996). In particular, where a "factual situation . . . falls squarely within" the purview of the Just Compensation Clause, that clause

8

should "subsume" more generalized substantive-due-process claims. *Miller v. Campbell Cnty.*, 945 F.2d 348, 352 (10th Cir. 1991).

Because the Complaint does not adequately allege any constitutional violations, the district court properly dismissed the claims raised under § 1983.

## B.     Allegedly Premature Ruling on Motion to Dismiss

Mrs. Smith moved on September 18, 2020, to realign the parties so that the Neighbors would become plaintiffs with respect to claims against the City Defendants. At that time the motion to dismiss filed by the City Defendants was pending. On November 6, 2020, the magistrate judge granted the motion to realign except for the count of the Complaint in which Mrs. Smith sought a declaratory judgment regarding her rights to the water line vis-à-vis the Neighbors, which was to be considered a cross-claim by Mrs. Smith against the Neighbors. The magistrate judge's order concluded with the instruction that Mrs. Smith "revise [her] Complaint accordingly." Aplt. App., Vol. 1 at A.279. Less than two weeks later, the district court granted the City Defendants' motion to dismiss. Mrs. Smith unsuccessfully moved for relief from judgment under Federal Rule of Civil Procedure 60(b), arguing that the district court should not have ruled on the motion to dismiss without giving her a chance to file a second amended complaint. On appeal she argues that the district court abused its discretion in dismissing her claim without first allowing her to submit an amended complaint and in denying her motion under Rule 60(b).

We see no abuse of discretion. The order dismissing the Complaint was founded on the court's determination that the Complaint failed to state a

9

constitutional violation by any of the City Defendants. The realignment of the parties could have no possible relevance to that determination. And the magistrate judge's order on realignment hardly granted Mrs. Smith an opportunity to revise her constitutional allegations. When the order stated that she was to revise her complaint "accordingly," all it permitted was to make the revisions necessary to realign the parties.

### C. Dismissal of State-Law Claims

In civil actions where a district court has original jurisdiction over some claims, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But in certain circumstances, exercising this jurisdiction is discretionary. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [. . .] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). We have advised district courts that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). In accordance with this advice, the district court dismissed all the state-law claims after it ruled in favor of the City Defendants on the federal claims.

Mrs. Smith argues that the district court erred in this case, however, because the Kansas courts have applied res judicata doctrine to dismiss with prejudice any

10

claims raised in state court after their dismissal under § 1367(c)(3). The dismissal by the district court would therefore deprive her of any forum to press her state-law claims. "We review the district court's decision to decline supplemental jurisdiction for abuse of discretion." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1139 (10th Cir. 2004).

We sympathize with Mrs. Smith's argument. But she apparently learned of the Kansas doctrine only after she filed her state-law claims in state court and they were dismissed under the doctrine. She did not make this argument to the federal district court and has therefore forfeited it. In any event, the basis of her argument has now evaporated. Kansas law has recently changed. On December 17, 2021, the Kansas Supreme Court in *Herington v. City of Wichita*, 2021 WL 5990322 (No. 120,329), overruled the doctrine that would bar her claims in state court. Mrs. Smith's state-court case is now pending before the Kansas Court of Appeals, so she should be able to litigate her state-law claims in Kansas courts. We therefore affirm the district court's dismissal without prejudice of her state-law claims.

### III.    CONCLUSION

We **AFFIRM** the district court's order granting dismissal of all claims and **GRANT** the motion by Appellant to file a supplemental appendix. We also **GRANT**

the motions to withdraw by counsel for the City.

Entered for the Court

Harris L Hartz
Circuit Judge